**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **ANNA HARRRIS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:21-CV-39** |
| | ) | |
| **JUSTIN MARR, in his official capacity** | ) | |
| **as Sheriff of Victoria County, Texas,** | ) | |
| **and CONSTANCE FILLEY JOHNSON,** | ) | |
| **in her official capacity as District** | ) | |
| **Attorney for Victoria County, Texas,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT CONSTANCE FILLEY JOHNSON'S REPLY TO PLAINTIFF'S
RESPONSE TO DEFENDANT'S 12(b)(1) and 12(b)(6)
MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, Constance Filley Johnson ("District Attorney Johnson"), and files this Reply to Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, and respectfully shows the court the following:

**I. Plaintiff's statement of "Relevant Facts" over-construes her allegations.**

1.      The alleged facts contained in Plaintiff's Original Complaint and First Amended Complaint ("FAC") that pertain to District Attorney Johnson are simple and straightforward. The allegations can be broken up into three relevant categories: 1) The Criminal Trespass Warning; 2) Plaintiff's Counsel's communications with the District Attorney's Office and her counsel; and 3) The District Attorney's refusal to prosecute Plaintiff related to the CTW. Review of these alleged facts reveals Plaintiff's statement of relevant facts in her Response to the District Attorney's Motion to Dismiss ("Response") desperately over-reaches.

1

### A.     The Criminal Trespass Warning

2.      The Criminal Trespass Warning ("CTW") contains both handwritten and pre-printed text that and can be verified by reviewing the form at issue. See, EFC No. #1 - Original Complaint ¶18, Exhibit A. First, the CTW complainant is listed as Eli Garza, who is a State District Judge. Original Complaint ¶15. Second, an unidentified Victoria County Sheriff's Deputy srved the CTW on July 27, 2021. Original Complaint ¶14, 20. Third, the pre-printed text on the CTW states, "Future occurrences of trespassing will result in an on scene arrest of the offender and an offense report being generated in the District Attorney's Office for criminal prosecution, which carries a maximum penalty of 180 days in county jail and/or a fine not to exceed $2,000." Original Complaint ¶19, Exhibit A.[1]

### B.     Plaintiff's Counsel's communications with the District Attorney's Office and her counsel.

3.      Plaintiff's Original Complaint lacks any allegations pertinent to District Attorney Johnson other than those related to the preprinted text of the CTW. The bulk of the relevant allegations instead come from Plaintiff's First Amended Complaint.

4.      First, Plaintiff's counsel, through attorney testimony, asserts they spoke with Tammy Deyton ("Ms. Deyton") of the Victoria County District Attorney's Office on July 28, 2021 and "explained that they would be seeking emergency relief to secure Plaintiff's rights before a trial scheduled to begin in a few days." FAC ¶ 34. Second, Plaintiff's counsel acknowledges Ms. Deyton did not know who Harris was or know about the CTW at the time of that phone call. FAC ¶35. Next, Plaintiff's counsel alleges they received a return phone call from Ms. Deyton to "apprise Harrow of (to paraphrase) who Harrrow's client was." FAC ¶37. The allegations continue by

---

[1] The First Amended Complaint contains the same allegations and those can be found in paragraphs 28, 27 and 33, and 32.

asserting, "Later that day, Plaintiff's counsel sent a letter to Deyton explaining Harris's claims and anticipated application for relief." FAC ¶38.

### C.     The District Attorney's refusal to prosecute Plaintiff related to the CTW.

5.     Other allegations relevant to the issue of Plaintiff's standing can be found in Plaintiff's First Amended Complaint paragraphs 34–46. See, FAC ¶34 – 36.

6.     On July 29, 2021, Plaintiff's counsel became apprised that undersigned counsel would be representing the Sheriff and forwarded him a notice letter "explaining Harris's claims and anticipated application for relief. FAC ¶38 - 39.[2] Then, less than an hour later, Plaintiff filed her lawsuit around 2:39 PM. FAC ¶40. Plaintiff emailed copies of the lawsuit to Defendants' attorney at 2:54 PM. ¶41. A short time later, at 3:42 PM, Defendants' counsel contacted Plaintiff's attorney and informed them the District Attorney would not prosecute Plaintiff related to the CTW. FAC ¶42.

7.     According to these allegations, Plaintiff's counsel sent the notice of Plaintiff's intent to sue to Defendants' counsel and then sued less than an hour later. Then, one hour and three minutes after the lawsuit had been filed, Plaintiff's counsel provided copies of the filings to Defendant's counsel. In a matter of minutes, 48 minutes to be exact, Plaintiff had received notice the District Attorney would not prosecute.

### D.     Plaintiff's misleading assertions of fact.

8.     In her Response, Plaintiff inappropriately asserts specific allegations exist that are not pled in her Original Complaint or her First Amended Complaint.

---

[2] Plaintiff has conveniently not attached the notice letter because it does not request the district attorney "disclaim any intent to prosecute." See, Exhibit A - Plaintiff's Notice Letter. Plaintiff also does not also mention the time, 1:44 PM, that they provided the notice letter to Defendant's counsel. The timeline established by such information would establish a total time of 1 hour 58 minutes elapsed from the time Plaintiff's counsel first provided her notice letter to Defense Counsel until they received word the District Attorney would not prosecute Plaintiff related to the CTW.

9.      Plaintiff contends her counsel "request[ed] that [District Attorney Johnson] not prosecute [her] for failing to comply with the CTW" in a letter delivered to the District Attorney's office. Response p .3. However, nowhere in the allegations of the Original Complaint or the First Amended Complaint can such an allegation be found. Rather, Plaintiff merely alleges her counsel "*explain*[*ed*] [plaintiff's] claims and anticipated application for relief" by letter sent to the District Attorney's Office and that statement is correct. FAC ¶38; See also, Exhibit A - Plaintiff's Notice Letter.

10.     Next, Plaintiff reaches further by stating in her Response that "Harris specifically asked the District Attorney to disclaim any intent to prosecute." Response p .3. But, her letter did not state that and Plaintiff makes no such allegation in her *pleadings*. Nor has Plaintiff ever alleged District Attorney Johnson refused a request "that she disclaim prosecution." *Id*. Review of Plaintiff's Original Complaint and the First Amended Complaint make these misleading statements by Plaintiff clear.

11.     To summarize, Plaintiff's pleadings, upon which the motion to dismiss is based, never alleges that her attorneys ever spoke with District Attorney Johnson and never alleges that the District Attorney or anyone in her office was specifically asked to "disclaim prosecution."

**II. Plaintiff attempts to reframe Defendant's attack on standing as one more appropriately concerning mootness because she cannot meet her burden to show a live case or controversy between Plaintiff and District Attorney Johnson.**

12.     Plaintiff bears the burden of establishing subject matter jurisdiction as a threshold matter in any case and a 12(b)(1) motion must be addressed before all other things. *Ramming v U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). Standing provides the authority to invoke the power of the federal courts and derives from Article III of the United States Constitution's case or controversy

requirement. *Allen v. Wright*, 468 U.S. 737, 750-52, 104 S.Ct. 3315 (1984) *abrogated on other grounds by Lexmark International, Inc. v. Static Control Components*, Inc., 572 U.S. 118 (2014).

13.     Hence, standing determines if the plaintiff is entitled to adjudication of their case or controversy. Importantly, a court is "powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990). Standing requires an injury be "distinct and palpable" rather than hypothetical, that the injury be traceable to the defendant's alleged wrongful conduct, and that relief from the injury will likely to flow from a favorable ruling. *Id*.

14.     Plaintiff argues she had standing to sue when she filed her Original Complaint and that her First Amended Complaint relates back to that time. Plaintiff's argument concerning standing is brief because she hopes to lure this court into a debate concerning mootness. District Attorney Johnson's argument is clear and concerns only the issue of standing. It makes no difference whether this Court analyzes Plaintiff's standing at the time of filing the Original Complaint or at the time of the First Amended Complaint. In either scenario the allegations against District Attorney Johnson do not establish a case or controversy between the Plaintiff and the District Attorney.

      **A.     Plaintiff asserts she "need not wait to be prosecuted to seek relief…." But not credible threat of prosecution existed.**

15.     Plaintiff relies upon *Babbit v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979), for the proposition that Plaintiff had standing at the time of filing her Original Petition because Plaintiff "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Id*. See, FAC p. 6-7. The key requirement Plaintiff conveniently overlooks when relying on *Babbit* is that there must exist a "credible threat of prosecution…." *Babbit*, 442 U.S. at 298. The Supreme Court in *Babbit* explained, "persons having no fears of state prosecution except

those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Id*. (citing *Younger v. Harris*, 401 U.S. 37, 42 (1971)). And that is precisely the case here.

16.     Plaintiff then stretches the bounds of her allegations by arguing in her Response, "Here, Harris was specifically threatened with criminal prosecution by the District Attorney…." Plaintiff's Response p. 7. But, Plaintiff makes no such allegation in her Original Complaint or First Amended Complaint as evidenced by any lack of citation to either of those pleadings. *Id*. Again, review of the Original Complaint and First Amended Complaint make clear neither pleading contains allegations District Attorney Johnson, or anyone from her office, specifically threatened prosecution.

17.     Plaintiff then hopes this court will take a logical leap and accept that the pre-printed text of the CTW suffices to establish a credible threat of prosecution by District Attorney Johnson without any allegation it was either prepared, condoned, adopted or ratified by District Attorney Johnson. The facts alleged by Plaintiff, do establish, however, that District Attorney Johnson stated she would not prosecute Plaintiff related to the CTW. FAC ¶42.

18.     This Court should reject Plaintiff's encouragement to exert jurisdiction by "embellishing [] deficient allegations of standing." *Whitmore*, 495 U.S. 149, 155-56.  Plaintiff has failed to plead any facts that permit an inference District Attorney Johnson ever conducted herself in a manner that would permit a reasonable person to believe a "credible" threat of prosecution existed as in Babbit. *Babbit*, 442 U.S. at 298.

     **B.     Plaintiff concedes the applicability of the *City of Los Angeles v. Lyons* Supreme Court case concerning standing.**

19.     District Attorney Johnson's argument concerning standing is simple: At no time did any conduct by or attributable to District Attorney Johnson ever give rise to a case or controversy with Plaintiff. The Supreme Court case of *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660,

(1983) provides the requisite analysis this court must perform to determine Plaintiff's standing. As explained in District Attorney Johnson's 12(b)(1) motion to dismiss, application of the *Lyons* criteria to this case concludes no justiciable case or controversy ever existed between Plaintiff and District Attorney Johnson.

20.    Plaintiff concedes as much by agreeing the *Lyons* case would lead to an adverse finding regarding Plaintiff's standing against District Attorney Johnson. See, FAC p. 7 ("It is possible… Harris may have lacked standing to seek prospective relief under City of Los Angeles v. Lyons…."). Plaintiff intentionally glosses over *Lyons* without attempting to address why the *Lyons* criteria favor her standing against District Attorney Johnson. Instead, Plaintiff attempts to misdirect this court by asserting *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*, 528 U.S. 167 (2000) distinguishes Plaintiff's case from *Lyons*.

21.    *Friends of the Earth*, however, is easily distinguishable. In *Friends of the Earth*, the Plaintiff filed suit as a result of the Defendant's active discharge of illegal waste. *Id*. at 184. The Plaintiff had standing because the court determined there was "nothing 'improbable'" about nearby residents being harmed by the active discharge of pollutants." *Id*. Therefore, unlike this case and unlike *Lyons*, the *Friends of the Earth* decision involved active, unlawful conduct and did not seek prospective relief. *Id*. Here, there is no active, unlawful conduct by District Attorney Johnson. In this case, as in *Lyons*, Plaintiff seeks prospective relief from potentially unlawful conduct. See, *Lyons*, 461 U.S. 103.

22.    As outlined in District Attorney Johnson's Motion to Dismiss, application the *Lyons* criteria recognizes Plaintiff's allegations are exactly the type of speculative injury the Supreme Court intended to prevent from serving as the basis of a case or controversy. See, *Id*. at 101-02 ("Abstract injury is not enough. The plaintiff must show that he 'has sustained or is immediately

in danger of sustaining some direct injury' as a result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" (citations omitted)). Plaintiff's failure to address the *Lyons* criteria acknowledges as much. Plaintiff only seeks hypothetical, prospective relief related to a now, nonexistent CTW which District Attorney Johnson did not prepare, authorize, or ratify. *Lyons* provides the appropriate framework within which to analyze Plaintiff's standing and that analysis concludes dismissal for is warranted.

### C.   Plaintiff's best case does not even allege any direct conduct by District Attorney Johnson.

23.     Plaintiff has pled her best case and her allegations does not even allege District Attorney Johnson committed any direct act against her. Rather, Plaintiff's best case attempts to impute conduct to District Attorney Johnson based upon the pre-printed text the Sheriff's CTW. Plaintiff does not, however, assert any allegations supporting District Attorney Johnson ratified, adopted or had any input regarding the language of the CTW.

24.     Plaintiff's best case does attempt to manufacture conduct from the District Attorney by providing attorney statements related to a telephone conference initiated by Plaintiff's counsel with Ms. Deyton at the District Attorney's office. Plaintiff, however, is careful to avoid any specific allegation Ms. Deyton had any authority to act on behalf of the District Attorney or that Ms. Deyton expressed any knowledge of District Attorney Johnson's intent to prosecute Plaintiff related to the CTW. Those glaring omissions confirm Plaintiff's allegations that the telephone conference with Ms. Deyton does not permit any reasonable inference that District Attorney Johnson intended to prosecute Plaintiff or that a credible threat of prosecution existed.

**D.      Plaintiff's argument she seeks nominal damages against District Attorney Johnson contradicts her pleadings and does not obviate the need to analyze standing.**

25.      In an attempt to create standing, Plaintiff attempts to amend her pleadings to include a claim for nominal damages against District Attorney Johnson.

26.      Both the Original Complaint and the First Amended Complaint state, "The District Attorney is sued in her official capacity **for injunctive relief only**." Original Complaint ¶5, FAC ¶8 (emphasis added). However, even if we assume Plaintiff seeks nominal damages against District Attorney Johnson, she still does not have standing to sue District Attorney Johnson because again, her best plead case does not allege sufficient facts to give rise to a case or controversy between the Plaintiff and District Attorney Johnson.

27.      Plaintiff argues the recent case of *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), establishes that a claim for nominal damages, in and of itself, automatically provides a plaintiff with standing. Response p. 12. This simply is an incorrect interpretation of that case. *Uzuegbunam v. Preczewski* does not eviscerate the need to comply with Article III's constitutional mandate that a case or controversy exist. In fact, it reiterates that a case or controversy must exist to invoke the authority of the court and analyzes whether a request for nominal damages satisfies the third requisite of standing. *Uzuegbunam v. Preczewski*, 141 S. Ct. at 794.

28.      Contrary to Plaintiff's assertion, in *Uzegbunam* the Supreme Court actually affirmed the need to establish standing as an "irreducible constitutional minimum". *Id*. at 797 (internal quotations and citations omitted). The Supreme Court explicitly articulated the crux of the *Uzuegbunam* case as follows:

> We granted certiorari to consider whether a plaintiff who sues over a completed injury and establishes the first two elements of standing (injury and traceability) can establish the third by requesting only nominal damages.

*Id*.

29.     The *Uzuegbunam* case does not hold that a request for nominal damages automatically establishes standing as Plaintiff claims. Response p. 11. The case only confirmed that once a Plaintiff's request for injunctive relief becomes moot, standing for suit remains if the Plaintiff seeks damages, even nominal damages, related to a harm that has already occurred. *Id*. at 797-98. That has always been the law. The Supreme Court just clarified there exists no need for compensatory damages as a prerequisite for nominal damages. *Id*. at 800-01.

30.     This court should review the issue of standing as a preliminary issue as mandated by established law and evaluate Plaintiff's standing according to the criteria set forth in *Lyons*. Said analysis will conclude Plaintiff lacks standing to bring any claim against District Attorney Johnson and her suit should be dismissed for want of subject matter jurisdication.

**III. Plaintiff's argument the District Attorney is a proper party solely by virtue of her position and without personal involvement misinterprets the law.**

31.     Plaintiff argues the "District Attorney is the proper defendant for a request for injunctive relief restraining an unconstitutional prosecution *regardless* of her [personal] involvement in the issuance of the CTW or her past actions at all." Response p. 14. This argument itself mandates personal involvement by way of either: 1) the District Attorney prosecuting the Plaintiff related to the CTW or 2) some conduct demonstrated by the District Attorney that creates a credible threat of prosecution related to the CTW. Plaintiff's allegations do not, however, establish a basis for a finding of either.

**A.      The law requires personal conduct on behalf of the district attorney.**

32.      Plaintiff first proposes that the authority to enforce criminal statues alone is enough to make District Attorney Johnson a party to the case. To support this proposition, Plaintiff cites *Crane v Texas*, 759 F.2d 412, 430 (5th Cir. 1985). However, review of the *Crane* case reveals Plaintiff overlooks the extensive personal involvement by the district attorney in that case. In

*Crane*, the district attorney initiated a prosecution against Crane and prepared an information and accompanying affidavit charging him with a misdemeanor. *Id*. at 414-15. The district attorney had also implemented a policy related to the issuance of misdemeanor capias without a finding of probable cause by an impartial magistrate and Crane was subjected to such a capias. *Id*. at 414.

33.     Clearly, in *Crane* the district attorney had personal involvement in multiple aspects of the case. The district attorney prosecuted plaintiff and was also responsible for the capias warrant issued for plaintiff by virtue of the district attorney's implementation of the practice governing the issuance of misdemeanor capias warrants. In the case at hand, the district attorney has had absolutely no personal involvement in anything related to the CTW. Plaintiff does not allege District Attorney Johnson prosecuted her or alleged that District Attorney Johnson played any role in the issuance of the CTW as the plaintiff in *Crane* did. It is apparent Plaintiff's reliance on the *Crane* case is obviously misplaced.

> **B.     To determine if the District Attorney is a proper party the court must apply a two-prong test. First, the official must have the particular duty to enforce the statute in question, and second, the official must have a demonstrated willingness to exercise that duty.**

34.     Plaintiff herself relies upon case law that confirms an official with a duty to enforce a statute must also "demonstrate[] [a] willingness" to exercise that duty to be a proper party to a suit for injunctive relief. See, Response p. 14, *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). In *Morris*, an inmate sued the governor and the Texas Department of Corrections executive director for various alleged constitutional violations stemming from a statute that permitted a yearly fee charged to inmates who received medical care. *Id* at 742-43. The court ultimately held the governor was not a proper party to the lawsuit due to a lack of sufficient connection to the plaintiff's claim. *Id* at 745-46. The court, relying on *Ex Parte Young*, 209 U.S. 123 (1908), applied the long-established rule that, "the required connection [to a claim] is not merely the general duty

to see that the laws of the state are implemented, but the particular duty to enforce the statute in question and a *demonstrated willingness to exercise that duty*." *Morris*, 739 F.3d at 746 (citing Ex Parte Young 209 U.S. at 157) (internal quotations omitted) (emphasis added), see also Response p. 14.

35.     Despite citation to this unambiguous rule of law, Plaintiff maintains her position that personal involvement by the District Attorney is not required. Such an assertion is obviously wrong. It is nonsensical for Plaintiff to take the position District Attorney Johnson, or any District Attorney, can "demonstrate a willingness" to prosecute without also alleging any conduct on the District Attorney's behalf. And Plaintiff has not alleged that District Attorney Johnson participated in any way in the issuance of the CTW, prosecuted Plaintiff, or that any conduct rightfully attributed to her exemplifies a willingness to prosecute Plaintiff related to the CTW.

> **C.     *Roe v. Wade* does not provide any authority regarding the standing to sue a District Attorney.**

36.     Lastly, Plaintiff attempts to convince this court District Attorney Johnson is a proper defendant in this case because the Dallas County District Attorney, Henry Wade, was a party to *Roe v. Wade*, 410 U.S. 113, 120 (1973). *Roe v Wade*, does not, however, provide any law regarding standing to sue a district attorney. *Roe v. Wade*, is distinguishable on its facts because it involved a suit for declaratory judgment concerning Texas' criminal abortion statutes and the defendant explicitly took the position that the statutes at issue were constitutional because the State of Texas had compelling interests in the health of the mother and the unborn child. *Id*. at 120, 163, 164. Here, Plaintiff does not seek declaratory relief and the District Attorney has not explicitly taken a position regarding CTW other than stating she would NOT prosecute.

37.     Neither the Original Complaint or the First Amended Complaint allege any conduct on behalf of District Attorney Johnson related to the CTW. It is illogical for Plaintiff to assert District

Attorney Johnson has demonstrated a willingness to prosecute Plaintiff without also alleging some personal involvement related to the CTW. In fact, the only conduct alleged by Plaintiff concerning District Attorney Johnson related to the CTW is that she confirmed she would not prosecute Plaintiff related to the CTW. This is exactly the point District Attorney Johnson relies upon in her 12(b)(6) motion to dismiss.

**IV. Plaintiff argues she has sufficiently plead a *Monell* claim but no such claim has been asserted and even if it had her pleadings do not meet the heightened pleading standards required by the 5th Circuit.**

38.     A local government "is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001)).  Plaintiff correctly recites the elements necessary for her to establish liability against Victoria County under Section 1983, "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578 (quoting *Monell*, 436 U.S. at 694)).

39.     "A policy or custom is official only 'when it results from the decision or acquiescence of the . . . officer or body with 'final policymaking authority' over the subject matter of the offending policy.'" *Peterson*, 588 F.3d at 847 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).  There is no *de facto* final policymaking authority, so a plaintiff must show the policy was promulgated by the governmental unit's actual policymaker.  *Peterson*, 588 F.3d at 847.

40.     "[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire,* 77 F.3d 116, 121 (5th Cir.1996) (citing *Schultea,* 47 F.3d at 1433).

**A. Plaintiff's argument she has plead a claim for *Monell* liability is not supported by sufficient factual allegations to make them plausible.**

41.    Quick review of the Plaintiff's Original Complaint and her First Amended Complaint make clear Plaintiff has not asserted a *Monell* claim involving conduct by District Attorney Johnson. Even if she had, her factual allegations are insufficient to meet her pleading burden.

42.    First, nowhere in Plaintiff's Original Complaint or in her First Amended Complaint does she allege there existed an official or unofficial policy promulgated by District Attorney Johnson that served as the moving force behind Plaintiff's damages. To remedy this blatant deficiency, Plaintiff argues that the conversation had between Plaintiff's counsel and Ms. Deyton of the District Attorney's office suffices to permit a "plausible inference of a policymaking decision by the District Attorney to reaffirm the unconstitutional CTW." Response p. 17.

43.    However, review of Plaintiff's allegations related to said telephone conference do not support any plausible inference that Ms. Deyton had authority to and did act on behalf of District Attorney Johnson, that Ms. Deyton demonstrated a willingness to prosecute Plaintiff due to the CTW, or that District Attorney Johnson was involved in any way. See, FAC 34 – 46. Simply, Plaintiff's allegations wholly lack any factual basis permitting a plausible inference of a policy making decision by District Attorney Johnson.

44.    Plaintiff then attempts to establish her allegations permit a plausible inference of policymaking by District Attorney Johnson due to the pre-printed text of the CTW. Plaintiff's position is that presumably District Attorney Johnson "would have [] vetted and approved" the CTW form. Response p. 17-18. However, Plaintiff makes no allegations District Attorney Johnson vetted or approved the CTW form, that the CTW form was create by the District Attorney's office, or that the CTW derived from the District Attorney's Office.

45.     Plaintiff overstates what reasonable inferences can be drawn from her allegations. Review of the allegations do not comply with the 5th Circuit's heightened pleading standards that require "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Reyes v. Sazan,* 168 F.3d 158, 161 (5th Cir.1999). Her allegations do not satisfy the heightened pleading standards required to survive a motion to dismiss as articulated in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Plaintiff's claims should therefore be dismissed for failure to state a claim upon which relief may be granted.

46.     WHEREFORE, PREMISES CONSIDERED, Defendants, Constance Filley Johnson moves the Court to dismiss all claims against her and that she recover her attorney fees and costs and have such other and further relief to which she may be justly entitled.

Respectfully submitted,

CULLEN, CARSNER, SEERDEN & CULLEN, L.L.P.
119 South Main Street (77901)
Post Office Box 2938
Victoria, Texas 77902-2938
(361) 573-6318; (361) 573-2603 Fax

By: /s/ Kevin D. Cullen
    Kevin D. Cullen, Federal ID No. 957
    ATTORNEY FOR DEFENDANT
    CONSTANCE FILLEY JOHNSON

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing pleading has been served on plaintiff on this the 17th day of September, 2021 in accordance with the Federal Rules of Civil Procedure.

/s/ Kevin D. Cullen

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **ANNA HARRRIS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:21-CV-39** |
| | ) | |
| **JUSTIN MARR, in his official capacity** | ) | |
| **as Sheriff of Victoria County, Texas,** | ) | |
| **and CONSTANCE FILLEY JOHNSON,** | ) | |
| **in her official capacity as District** | ) | |
| **Attorney for Victoria County, Texas,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT CONSTANCE FILLEY JOHNSON'S REPLY TO PLAINTIFF'S
RESPONSE TO DEFENDANT'S 12(b)(1) and 12(b)(6)
MOTION TO DISMISS**

# EXHIBIT A – Plaintiff's Notice Letter

**kcullen@cullenlawfirm.com**

| | |
|---|---|
| **From:** | Jason Harrow <jason@gerstein-harrow.com> |
| **Sent:** | Thursday, July 29, 2021 1:44 PM |
| **To:** | kcullen@cullenlawfirm.com |
| **Cc:** | Charlie Gerstein; Nathan Fennell |
| **Subject:** | Letter re: Anna Harris v. Victoria County Sheriff's Office |
| **Attachments:** | 2021.7.28 letter.pdf |

Dear Mr. Cullen-

I understand from the County Judge's office that you are going to represent the Sheriff's Office in this matter. As I believe you also know, we'll be requesting emergency relief in the form of a TRO, and we'll be requesting a decision by this Monday.

In order to give you as much time as possible to understand and respond to our arguments, we prepared the attached letter. We attempted to send it yesterday, but we just found out that you would be representing the Sheriff in this matter. We reserve the right to change these arguments in the official filing; they are just a sketch for your benefit.

Feel free to give me a call at your convenience to discuss scheduling, service, and other matters. Otherwise, unless you tell me not to, we will send the court filings by email to this address when they are filed, which should be just a few hours from now.

Best,
Jason Harrow
610-357-9614

Jason Harrow
Gerstein Harrow, LLP
jason@gerstein-harrow.com

# GERSTEIN HARROW LLP

1

Tammy Deyton
Victoria County District Attorney's Office
Bridge Street Annex Building
205 N. Bridge St., Suite 301
Victoria, Texas 77901

Justin Marr, Sheriff
Victoria County Sheriff's Office
101 N. Glass St.
Victoria, Texas 77901

Dear Officials from the Sheriff's Office and District Attorney's Office:

We write to notify you of the legal complaint and TRO that we plan to file as soon as possible on behalf of Anna Barrett-Tate against the District Attorney and Sheriff in the United States District Court for the Southern District of Texas. We will be requesting emergency relief forbidding the Sheriff and District Attorney from enforcing an unconstitutional criminal trespass warning.

On July 27, 2021, Plaintiff Anna Barrett-Tate was served with a criminal trespass warning by the Victoria County Sheriff's Office that "indefinitely" bars her from the Victoria County Courthouse and all of its courtrooms; the Victoria County Annex (which contains government offices including the Tax Office, Treasurer's Office, District Attorney's Office, and City–County Credit Union); and the Victoria County Sheriff's Office, which also contains a jail. *See* Attachment (copy of criminal trespass warning). The only stated reason for this indefinite bar on her ability to access a wide swath of public resources and to observe criminal trials is that she made a single "inappropriate video" from the "judge's bench . . . in a courtroom on the third floor of the 1892 Courthouse." *Id.* The supposedly "inappropriate" video is a 15-second clip of Plaintiff dancing in a vacant courtroom that is open to the public and has not been used for court proceedings for years. The video is accompanied by the text "When you pick a jury on a Monday before lunch......" and pop music is playing in the background. (Available at https://bit.ly/3f3U6vi.) There is no possible inference that Plaintiff presents any threat of harm to anyone or to property, nor is there any such allegation; no evidence that the warning was issued in response to any disruption to a court proceeding or any other County function; and no allegation that Plaintiff was in any unauthorized area or engaged in any actual trespass.

Plaintiff will be requesting a TRO to immediately restore her access to all three buildings because the unreasonable ban is a clear and obvious violation of her First Amendment and Due Process rights. *First*, with respect to the courthouse in particular, "the circumstances under which the . . . public can be barred from a . . . trial are limited." *Globe Newspaper Co. v. Superior Court*,



gerstein-harrow.com
hi@gerstein-harrow.com
323-744-5293

*California*
3243B S. La Cienega Blvd.
Los Angeles, CA 90016

*Washington, DC*
611 Pennsylvania Ave. SE, No. 317
Washington, DC 20003

# GERSTEIN HARROW LLP

2

457 U.S. 596, 606 (1982). "[I]t must be shown that the denial is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest." *Id.* at 607; *see also Huminski v. Corsones*, 396 F.3d 53, 83 (2d Cir. 2004) (applying same strict scrutiny standard to individualized denial of access by way of criminal trespass warning). Here, the government cannot meet that standard: there is no compelling interest in banning Plaintiff indefinitely from open court proceedings for posting a single video that a single government official deems "inappropriate," though not threatening or disruptive, and the grossly overbroad remedy—which indefinitely bans her from every court proceeding plus two additional, unrelated government buildings—is not narrowly tailored. *See id.* at 87–88 ("The Notices Against Trespass bar [the plaintiff] from the state courthouses of Rutland and their grounds indefinitely and virtually completely. Because the exclusion effected by the trespass notices was plainly overbroad in light of its duration, geographical scope, and scope of proceedings covered, we conclude that the exclusion was not 'tailored' to the threat and is therefore unconstitutional.").

*Second*, the ban violates the First Amendment's prohibition on retaliation. "The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Here, Plaintiff will be able to show that she was "engaged in constitutionally protected activity" by engaging in indisputably protected speech in a location open to the public without restriction of any kind (in other words, a public forum); that "the defendants' actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity" in the form of the ban; and that "the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct," since that is stated explicitly on the warning. *See id.*

*Third*, the ban violates Due Process. Plaintiff has a "liberty interest 'to remain in a public place of h[er] choice' and th[e] defendants interfered with this interest." *Kennedy v. City of Cincinnati*, 595 F.3d 327, 336 (6th Cir. 2010) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999)). Thus, "[a]ny competent government official, particularly a police officer, should have realized that he cannot deprive a person, who has not committed a crime or violated some regulation, nor was likely to do so, of access to public grounds without due process of law." *Id.* at 338. Here, the trespass warning did not cite any legal violation but simply banished Plaintiff from three governmental buildings that serve myriad functions. That arbitrariness violates due process.

* * *



gerstein-harrow.com
hi@gerstein-harrow.com
323-744-5293

*California*
3243B S. La Cienega Blvd.
Los Angeles, CA 90016

*Washington, DC*
611 Pennsylvania Ave. SE, No. 317
Washington, DC 20003

# GERSTEIN HARROW LLP

3

As we mentioned to Ms. Deyton on the phone, we plan to file a complaint in federal court and move for a TRO to issue as soon as possible, hopefully by Monday, August 2, when a criminal trial begins in which our client has a strong interest in attending. We will send you the relevant documents as soon as possible, and would appreciate your cooperation and professionalism as we seek to litigate this quickly, fairly, and efficiently.

Sincerely,

Jason Harrow and Charlie Gerstein

(Note: Mr. Gerstein is admitted to practice in the Southern District of Texas, and Mr. Harrow has a good faith belief that he will be admitted pro hac vice for this matter.)



gerstein-harrow.com
hi@gerstein-harrow.com
323-744-5293

*California*
3243B S. La Cienega Blvd.
Los Angeles, CA 90016

*Washington, DC*
611 Pennsylvania Ave. SE, No. 317
Washington, DC 20003

 

# Victoria County Sheriff's Office
## Criminal Trespass Warning (CTW)

Date: _07/27/21_
Case No. _521-08308_

Complainant: _Judge Eli Garza_
Address: _115 N Bridge_
City: _Victoria, TX_
Phone:

### Location and Reason for CTW:

_Anna Harris Barrett Tate has been issued a CTW for the following location: Victoria County Courthouse, 115 N Bridge, Victoria County Annex, 205 N Bridge and VCSO, 101 N Glass. The CTW was issued due to Anna Harris Barret Tate making an inappropriate video on the judge's bench, which occurred in a courtroom located on the third floor of the 1892 Courthouse_

The complainant has contacted the Victoria County Sheriff's Office requesting a Criminal Trespass Warning (CTW) to be issued to the following person:

Name:
Address: _1005 Atlanta A_
City:
Phone: _(361) _2-4073_

This CTW is being issued to the above named person under the authority of the Texas Penal Code Section 30.05 (Criminal Trespass) at the complainant's request. It is valid for a period of one (1) year from the date of issuance. Should the complainant desire to cancel this CTW, the complainant must contact the VCSO either in person or summon a patrol unit to the complainant's location and request a cancellation in person. A cancellation of a CTW cannot be done over the phone or by a second party. _If cancelled, a subsequent CTW will not be issued for a period of 30 days from the cancellation._

_[signature]_ _1-23-2021_
Complainant's signature and date

_By signing this form, the person to whom this CTW is directed acknowledges he/she is not allowed on the complainant's property (listed address) for a period not to exceed one (1) year from the date of issuance. Future occurrences of trespassing will result in an on scene arrest of the offender and an offense report being generated in the District Attorney's Office for criminal prosecution, which carries a maximum penalty of 180 days in county jail and/or a fine not to exceed $2,000. If you have a legal right to be on the complainant's property by virtue of a court order or process, then it is incumbent upon you to provide this information to the deputy issuing the CTW._

Signature and Date

_[signature]_ _265_ _7/27/21_
Issuing VCSO Deputy and Date

White Copy...
Yellow Copy...
Pink Copy - Patrol...
Golden...